**CITY OF NEW ORLEANS and New Orleans Union Passenger Terminal Committee**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY.**

Civ. A. No. 92–2461.

United States District Court, E.D. Louisiana.

Oct. 29, 1992.

William David Aaron, Jr., Polack, Rosenberg, Rittenberg & Endom, Nancy Eleanor Graham, City Attorney's Office, William M. Lucas, Jr., Joyce M. Dombourian, Sharon Cormack Mize, Michael A. Berenson, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for plaintiffs.

Lawrence Emerson Abbott, Patrice W. Oppenheim, Abbott, Best & Meeks, New Orleans, La., for defendant.

## ORDER AND REASONS

ARCENEAUX, District Judge.

Plaintiffs, the City of New Orleans and the New Orleans Union Passenger Terminal Committee (NOUPT) filed a motion to remand to the Civil District Court for the Parish of Orleans, State of Louisiana based on improper removal procedure and lack of diversity jurisdiction. The motion was subsequently taken on the papers by the court. Having reviewed the pleadings, memoranda and the relevant law, the court finds merit in plaintiffs' motion to remand because defendant removed this case after the 30–day period provided in 28 U.S.C. § 1446(b) had passed.[1]

### Facts

The Louisiana State Legislature in 1938 authorized the City of New Orleans, ("the City") "to acquire, construct, maintain and operate" a railroad passenger terminal to be named the New Orleans Union Passenger Terminal. Pursuant to Act 385 of that Constitutional Amendment, the City entered into an agreement with various railroads on October 22, 1947, ("the Agreement").

---

**1.** Therefore, the issue of diversity will not be     addressed herein.

Article I, Section 5(A) of the Agreement provided that various committees would be formed to supervise or control the acquisition, construction, maintenance and operation of the passenger terminal station on behalf of the City. (Memorandum in Opposition, Ex. "B," the Agreement at 23). A particular committee known as the New Orleans Union Passenger Terminal Committee ("NOUPT Committee") was to be comprised of representatives of the various railroads, representatives of the Public Belt Railroad Commission, and various City representatives. NOUPT Committee was formed specifically to direct the day-to-day activities of the passenger terminal on behalf of the City.[2]

Pursuant to Article VIII, Section 55(a) of the Agreement, Illinois Central conveyed to the City property at the intersection of South Claiborne and Earhart Boulevard in New Orleans, which forms the basis of this suit. (Memorandum in Opposition, Ex. "B" at 128). In return, the City granted to Illinois Central a servitude to use the property or facilities of the passenger terminal upon terms and conditions to be negotiated by NOUPT on behalf of the City. (*Id.* at 131). In the Agreement, the City agreed to perform these obligations through the NOUPT Committee.

On May 21, 1991, during the demolition of a building and excavation for Louisiana Department of Transportation and Development highway construction, materials of environmental concern were discovered below the surface of the site formerly sold by the Illinois Central to the City of New Orleans. Because Louisiana law provides a one-year statute of limitations for redhibition and tort claims, the City of New Orleans and NOUPT filed a lawsuit against Illinois Central to preserve any claims that would prescribe one year from the date of discovery of the subsurface damage. However, they did not serve Illinois Central.

Instead, plaintiffs mailed a "courtesy copy" of their petition to the attention of Mr. Ronald A. Lane, Vice President and General Counsel for Illinois Central on May 20, 1992. In a letter attached to the "courtesy copy," plaintiffs expressly stated that the petition had been filed solely for the purpose of interrupting prescription. (Defendant's Exhibit "A").

On July 22, 1992, more than thirty days after defendant received the petition, a notice of removal was filed in this court still without proper service having been confected.

## Motion to Remand

Plaintiffs argue that more than thirty days elapsed between defendant's receipt of the filed petition[3] which was mailed under cover of the letter referenced above on May 20, 1992, and the notice of removal which was filed on July 22, 1992. Thus, they claim that removal is untimely under the plain language of 28 U.S.C. § 1446(b).

Defendant counters that plaintiffs filed but never served the original petition upon Illinois Central. Thus, under section 1446(b), defendants maintain that service of process or some equivalent of formal service of process must be made on defendant before the 30-day removal period is even triggered.

## ANALYSIS

Both of these theories are well supported by case law. However, while there is a line of cases which requires actual service in order to trigger the 30-day period, this court believes that the clear wording of section 1446(b) favors the "receipt rule." *York v. Horizon Fed. Sav. & Loan Ass'n,* 712 F.Supp. 85 (E.D.La.1989) (relying on *Conticommodity Services, Inc. v. Perl,* 663 F.Supp. 27, 29 (N.D.Ill.1987).

The statute concerning removal of actions to federal court provides that:

The notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy

---

2. See Article III, Section 17(B); Article IV, Section 23: Article VIII, Sections 56(A) and 56(H) of the Agreement. (Memorandum in Opposition, Ex. "D" at 56, 128, and 131).

3. Under Louisiana law, an action is commenced upon the filing of a petition. La.Civ.C.Pro. art. 421.

of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (emphasis added). Under the "or otherwise" language, the courtesy copy mailing of a filed petition triggered the thirty day period.

Using the "actual service" interpretation found in *Love v. State Farm Mut. Auto. Ins. Co.*, 542 F.Supp. 65 (N.D.Ga.1982) and its progeny, if there is no service, but there is informal notification, the removing defendant can remove at its discretion without any time constraint until it is actually served—which then triggers the 30–day period for removal. Courts have based this conclusion on the interpretation of the legislative history which added the "or otherwise" language in 1949. *Love* provides this history of section 1446(b):

> Prior to 1948, a removal petition was in essence a state court responsive pleading; it was filed in that court within the time permitted to answer a complaint as established by the state's rules of civil practice. In 1948, in an attempt to make the removal procedure more uniform, Congress revised section 1446(b) to provide that the removal petition be filed in federal court "within twenty days after commencement of the action or service of process, whichever is later." 62 Stat. 939 (1948). Under this formulation, of course, the removal period could not begin until service of process had been obtained. A problem arose, however, in those states such as New York which permitted a plaintiff to commence a suit without serving or filing a complaint, merely by serving the defendant with a summons. Under the 1948 version of 1446(b), in such cases the removal period could expire before a defendant received a copy of the complaint, thus depriving

> him of an opportunity to remove the action. It was in response to this problem that Congress revised section 1446(b) to permit removal within twenty [now thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading. See H.R.Rep. No. 352, 81st Cong., 1st Sess., *reprinted in* [1949] U.S.Code Cong.Serv. 1254, 1268. Thus, the "through service or otherwise" language was intended to expand the removal period in states following the New York Rule *Potter [v. McCauley*, 186 F.Supp. 146, 148 (D.Md. 1960)].

*Love*, 542 F.Supp. at 68 n. 4 (emphasis added).

What this overbroad analysis fails to consider are the practical aspects of the congressional intent. In *Potter*, 186 F.Supp. at 149 n. 1, the court provides the following statement by the Chairman of the reporting Senate committee explaining the 1949 "salutary" amendment which states:

> In some States suits are begun by the by service of a summons or other process without the necessity of filing any pleading until later. As the section now stands, this places the defendant in the position of having to take steps to remove a suit to Federal court before he knows what the suit is about. As said section is herein proposed to be rewritten, a defendant is not required to file his petition for removal until 20 [now 30] days after he has received (or it has been made available to him) a copy of the initial pleading filed by the plaintiff setting forth the claim upon which the suit is based and the relief prayed for.

*Id.* (emphasis added).[4]

Thus, the "receipt rule" in this instance comports with the congressional intent. Defendant received a copy of the filed petition which set forth the claim upon which the suit was based and the relief prayed for. Illinois Central was apprised of all the facts about which it needed to know to determine whether the case was remova-

---

4. Furthermore, the circumstances concerning the "New York problem" relied upon in the *Love* case appear to be amply provided for in the second part of the statute which reads in relevant part:

> The notice of removal of a civil action or proceeding shall be filed ... within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

ble. No purpose is served by allowing Illinois Central to circumvent this 30–day rule.

Considering that federal courts are to construe the instant statute against removal and in favor of remand to state court,[5] and the fact that the choice of language of the statute is clear and unambiguous,[6] this court believes that "receipt rule" is the proper one to use in this instance. Thus, defendant defectively removed this action. Accordingly,

The motion to remand is GRANTED pursuant to 28 U.S.C. § 1447(c).

---

**5.** *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *York,* 712 F.Supp. at 87.

**6.** Congress chose the word "receipt or otherwise." Had Congress intended to require "ser-

vice" of an initial pleading, it certainly could have used that word. This statute has been amended numerous times since 1949; however, Congress has not disturbed this particular language.